UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA R. SANFORD,

      Plaintiff,

v.

DELOITTE, LLP a/k/a
  DELOITTE & TOUCHE USA LLP,
  a/k/a DELOITTE & TOUCHE LLP,

      Defendant.

Case No. 2:13-CV-15167

Honorable Judith E. Levy

Magistrate David R. Grand

_____/

Alice B. Jennings (P29064)
EDWARDS & JENNINGS, PC
65 Cadillac Square, Suite 2710
Detroit, MI 48226
(313) 961-5000
ajennings@edwardsjennings.com

Felicia Duncan Brock (P63352)
I.A.B. ATTORNEYS AT LAW, PLLC
25447 Plymouth Road
Redford, MI 48239
(313) 318-3180
Duncan@iabattorneys.com

*Attorneys for Plaintiff*

Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM OPPERWALL
  HARDY & PELTON, P.L.C.
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

*Attorneys for Defendant*

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Should Plaintiff Angela Sanford's Motion to Compel and Motion for Sanctions be denied, given Deloitte's specific, well-grounded objections to the vague and/or irrelevant nature of Sanford's discovery requests, for which she offers no specific arguments justifying her requests?

   Defendant Deloitte LLP says "yes."

   Plaintiff Angela Sanford would say "no."

2.    Should Deloitte be awarded its costs and attorney's fees incurred in responding to this motion, in whole or in part, because Sanford's motion to compel is not substantially justified?

   Defendant Deloitte LLP says "yes."

   Plaintiff Angela Sanford would say "no."

## TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ............................................. i

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................1

ARGUMENT ...................................................................................5

I.  DELOITTE'S RESPONSES TO THE REQUESTS CHALLENGED BY SANFORD'S MOTION ARE APPROPRIATE ...............................................................5

    A. "Job Selection Files" ...............................................................5

    B. "Applications, Resumes, [and] Interview Score Sheets" ..........................6

    C. "Brian Harrison" ...................................................................7

    D. "Personnel Records" ...............................................................9

II.  SANFORD'S REQUESTED PRE-2011 DOCUMENTS ARE NOT RELEVANT "BACKGROUND EVIDENCE" IN THIS CASE ...................................................................10

III. SANFORD IS NOT ENTITLED TO FEES, AND DELOITTE SHOULD BE AWARDED FEES IF THE MOTION IS DENIED.................................................................13

    A. Sanford's Request for Sanctions is Unwarranted....................................13

    B. Deloitte Should Be Awarded Fees for Responding to the Motion .......................14

CONCLUSION ................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Cantrell v. Knoxville Community Dev. Corp.*,
   60 F.3d 1177 (6th Cir.1995) ..................................................................13

*Doe v. Lexington-Fayette Urban Cnty. Gov't*,
   407 F.3d 755 (6th Cir. 2005) ................................................................14

*Jackson v. City of Chicago*,
   552 F.3d 619 (7th Cir. 2009) ........................................................ 11, 12

*McPherson v. Kelsey*,
   125 F.3d 989 (6th Cir.1997) ................................................................14

*Stevens v. McLouth Steel Prods. Corp.*,
   446 N.W.2d 95 (Mich. 1989) ................................................................4

*Weigel v. Baptist Hospital*,
   302 F.3d 367 (6th Cir. 2002) ........................................................ 12, 13

*Williams v. Hevi-Duty Elec. Co.*,
   819 F.2d 620 (6th Cir. 1987) ................................................................9

**Rules**

Fed.R.Civ.P.(a)(5)(A) ...........................................................................14

Rule 37 ....................................................................................... 14, 15

## INTRODUCTION

When the parties discussed this proposed motion on October 9, 2014, only two alleged problems were raised: the issue of whether Brian Harrison is an appropriate comparator such that requests for documents related to him are appropriate, and the issue of "background evidence."  Yet the motion to compel contains no discussion of the Harrison issue, and only a generic discussion of "background evidence," with no attempt to explain why the discovery sought here qualifies.  Sanford also seeks to compel three other categories of documents, without a single attempt to justify the requests or, in one case, explain why Deloitte's production was not adequate.

Sanford's motion fails to justify the relief it seeks, and Deloitte's objections to the discovery requests should be sustained.  The Court should further award Deloitte its fees incurred in responding to Sanford's motion.

## BACKGROUND

In September 2012, Sanford applied for an entry-level audit position with Deloitte & Touche LLP that would begin in Fall 2013, and had an on-campus interview at Walsh College.  (*See* Dkt. No. 25 ¶¶ 19-20; Dkt. No. 26, ¶ 19.)  She, along with other entry-level candidates, had follow-up interviews at the Detroit office in October 2012.  (*See* Dkt. No. 25, ¶ 22, Dkt. No. 26 ¶ 22.)  Deloitte offered eleven people employment after those interviews—six men and five women of

multiple races, including African American, Asian, Caucasian, and Hispanic people—but not Sanford.[1]  (*See* Dkt. No. 25, ¶ 25; Dkt. No. 26, ¶ 25.)

On March 29, 2013, Sanford filed a charge of discrimination with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission.  (Dkt. No. 25, ¶ 35; Ex. 1.)  Sanford's EEOC charge referenced only the October 2012 failure-to-hire.  (*See* Dkt. No. 15, Pg ID 107-110.)  In correspondence with the MDCR, Sanford said that the most "pertinent" comparator was Brian Harrison, another Walsh graduate, who she claimed had been "hired in October 2012."  (Ex. 2.)  Harrison, in fact, had interviewed in January 2012 and received an offer—long before Sanford's October 2012 interview for a Fall 2013 position.   (Ex. 3, at 0148.)  The MDCR found that he was not a proper comparator as a result, and dismissed the charge.  (*Id.* at 0158.)

Sanford filed suit on December 18, 2013.  (Dkt. No. 1.)  While the initial complaint alleged that she had made multiple applications to Deloitte since 2005, the complaint only alleged that the October 2012 failure to hire was discriminatory.  (*Id.* ¶¶ 6-12, 13-25.)  It contained six counts: one federal and one state count each of age, race, and sex discrimination.  (*Id.* ¶¶ 26-71.)  The First Amended Complaint was substantively identical.  (*See generally* Dkt. No. 4.)

---

[1] Those eleven individuals were Kelly Dunbar, Jillian Esshaki, Justin Gorski, Trevor Kuenz, Lina Kustantin, Wonseok "Johann" Lee, David Pacini, Tiffinique Walls, Tyler Webb, Ko Yamamoto, and Ruohan "Vivian" Yang.  (Ex. 4.)

On April 21, 2014, Sanford filed a Second Amended Complaint, asserting federal discrimination claims with respect to *every* application she made between 2005 and 2012, on "continuing violation" and "policy or practice" theories.  (Dkt. No. 11, ¶¶ 39, 43, 61, 65, 82, 86.)  Deloitte moved to dismiss, arguing that Sanford would have been required to file an EEOC charge within 300 days of each discrete act of discrimination, that the "policy and practice" or "continuing violation" claims were improper, and that she had only exhausted one federal claim: the October 2012 failure to hire.  (*See* Dkt. 15.)

During an August 22, 2014 status conference, the Court said that it was tentatively inclined to grant Deloitte's motion.  Thereafter, the parties voluntarily agreed that, in exchange for addressing certain discovery disputes, Sanford would voluntarily dismiss the Second Amended Complaint, withdraw all "continuing violation" and "policy and practice" claims, and file a Third Amended Complaint that "allege[s] only discrete claims of discrimination that are timely under the relevant statutes of limitations."  (Dkt. 23, Pg ID 241-42.)  Sanford filed a conforming Third Amended Complaint on August 29, 2014.  (Dkt. No. 25.)  Her Second Requests for Production referenced were filed on September 4.  (Ex. 5.)

Consistent with the stipulated order, there are only three timely federal claims in this case: the race, age, and sex discrimination claims related to the October 2012 failure to hire that Sanford included in her March 2013 EEOC

charge.  (*See supra* at 2.)  As to the state-law ELCRA claims, there is a three-year statute of limitations with no administrative exhaustion requirement.[2]  Thus, the only potentially timely ELCRA claims would be for those jobs that Sanford applied to with Deloitte & Touche LLP since December 18, 2010—three years before her initial complaint.[3]  Deloitte's records indicate that Sanford made only three applications in that time: the 2012 Walsh College application, and two positions in 2011 (Audit Senior Consultant and Audit Senior Assistant).  (Ex. 6.)

During Sanford's deposition, however, Sanford claimed that she had applied for an entry-level position through Walsh College in 2011.  (Ex. 7, Sanford Dep. at 391-92.)  She said that her basis for that belief was not personal memory, but "records" she obtained from Walsh College, and which she had produced in discovery.  (*Id.* at 394; Ex. 8.)  Sanford also said that she applied for the job through Walsh Career Services, but no other process.  (Ex. 7 at 405-06.)  She was then questioned about language in her Walsh record stating that "[t]o be considered for an interview you must apply through career services AND you must also apply online through the Deloitte website!"  (Ex. 8.)  Sanford claimed that the reference

---

[2] *Stevens v. McLouth Steel Prods. Corp.*, 446 N.W.2d 95, 100 n.5 (Mich. 1989).

[3] Deloitte has provided discovery based on the longest *potential* period of timely ELCRA claims on this record, but does not agree or concede that the ELCRA claims as pled fairly allege claims other than the October 2012 failure-to-hire, or that Sanford's August 29, 2014 Third Amended Complaint relates back to the December 18, 2013 initial complaint for limitations purposes.

to an "application" at deloitte.com meant only that she had to update a "profile" that she had created on Deloitte's website in 2008 or earlier.  (Ex. 7 at 406-07.)  When asked if she had proof that she "applied" in that sense, she admitted that "I don't know if I applied," that she didn't know when she updated her profile, and that she had no records of when she updated her profile.  (*Id.* at 411-413.)

## ARGUMENT

It is unclear exactly what documents Sanford is claiming were improperly withheld and why, but Sanford's motion uses bold type for certain phrases in Deloitte's responses, implying that these are the portions of the RFPs at issue.[4]  Further, Sanford's motion discusses "background evidence," but she does not offer any specific argument as to what documents she believes are relevant background evidence and why.  Whatever Sanford seeks to challenge, Deloitte's responses to all four RFPs are appropriate, and Sanford's motion should be denied.

## I.   DELOITTE'S RESPONSES TO THE REQUESTS CHALLENGED BY SANFORD'S MOTION ARE APPROPRIATE

### A.   "Job Selection Files"

Sanford first appears to challenge the response to Request No. 2 regarding "job selection files."  (Dkt. 27, Pg ID 295-96.)  Deloitte objected because it did not know—and still does not know—what Sanford means by "job selection file."  (*Id.*)

---

[4] The bolded phrases are "job selection files," "applications, resumes, interview score sheets," "Brian Harrison," and "personnel records for any and all Defendant employees."  (Dkt. 27, Pg ID 295-97.)

Sanford does not appear to be referring to hiring-related documents for the jobs she applied for, since other discovery requests explicitly cover that topic,[5] and Deloitte has provided documents responsive to those requests.

Given that Sanford is nonetheless objecting, the phrase "job selection file" must have some specific, idiosyncratic meaning—yet Sanford's counsel has never conferenced with Deloitte's counsel regarding this specific request, or offered Deloitte a definition of that phrase.  The phrase remains undefined in Sanford's Motion to Compel, and it is not discussed therein.  (*See generally* Dkt. 27.)  A search of all state and federal cases on LEXIS for the phrases "job selection file" or "job selection files" returns zero hits.  (*See* Ex. 10.)  Even a Google search of those phrases contains no intelligible results.  (*See* Ex. 11.)  Deloitte's objection is sound, and it should not be compelled to respond to this vague, undefined request.

### B.    "Applications, Resumes, [and] Interview Score Sheets"

Sanford next appears to challenge Deloitte's response to Request No. 3 related to "applications, resumes, [and] interview score sheets" for the eleven individuals offered employment out of the October 2012 interviews, plus Brian

---

[5] *See, e.g.*, Ex. 5, at RFP No. 3 ("applications, resumes, interview score sheets, as well as any other documents utilized during the hiring process"); RFP No. 6 ("emails, correspondence, handwritten notes or other information generated as a result of or during the decision making process . . ."); *see also* Ex. 9, RFP No. 2 ("original applications and/or hiring files; e-mails; and all salary and bonus records, including all of Defendant's Human Resources computerized documents and/or printouts for each individual applying for the same Deloitte position(s)")

Harrison.  (Dkt. 27, Pg ID 295.)  It is unclear why she does so, since Deloitte did provided responsive documents, except as to Brian Harrison, for reasons discussed *infra*.  (*See id.*; Ex. 12.)  Specifically, Deloitte provided the resumes and job applications of the 11 successful candidates from the October 2012 interviews, and although Sanford did not define "interview score sheets," Deloitte nonetheless provided documents that would appear to be responsive—*i.e.*, pre-printed forms on which the October 2012 interviewers took notes, and Excel spreadsheets listing the final interview scores of the October 2012 candidates.  (*See, e.g.*, Ex. 13.) Sanford's motion does not identify the problem with this production.  The motion to compel on this point should be denied.

### C.    "Brian Harrison"

Sanford next appears to challenge the response regarding Brian Harrison, without actually raising any arguments.  (Dkt. 27, Pg ID 296.)  Her claims at deposition suggest that she believes that she applied through Walsh College for an entry-level position in 2011, that she did not receive the position, but Harrison did.[6]  This is wrong for two reasons; as Deloitte's objection notes (*see id.* at 296-97), Sanford did not apply for the position that Harrison obtained.

---

[6] That has not always been Sanford's position.  In her March 2013 EEOC intake questionnaire, Sanford listed Harrison as a comparator for the October 2012 failure-to-hire.  (Ex. 14.)  She repeated that claim in an April 22, 2013 letter to the MDCR.  (Ex. 2.)  When she was informed that Harrison was actually offered employment prior to the October 2012 interview season, Sanford's response was

*First*, Sanford did not apply for the on-campus Walsh position in 2011. Sanford's alleged evidence on this point is a 2011 print-out from Walsh College. (*See* Ex. 8.) But that form, on its face, states as follows:

> IMPORTANT!! To be considered for an interview you must apply through career services AND you must also apply online through the Deloitte website!

(*Id.*)  At her deposition, Sanford claimed that an "application" meant only that she needed to update a pre-existing profile on the Deloitte.com website.  (Ex. 7 at 406-07.)  This, too, is contrary to her own exhibit, which instructs the applicant to "[s]ubmit a *job-specific* profile by visiting the career section of www.deloitte.com."  (Ex. 8 (emphasis added); *see also* Ex. 15, ¶¶ 4-5.)  Even under Sanford's own view of the process, she admitted that "I don't know if I applied," that she did not know when she updated her profile, and that she had no records of when she would have done so.  (Ex. 7, at 411-413.)

Sanford has only speculation as to whether she applied for an entry level position in 2011, while Deloitte's own records confirm that she did not.  She applied for three Deloitte & Touche LLP positions since December 18, 2010: two experienced positions in 2011 (Audit Senior Assistant and Audit Senior Consultant), and the entry-level position in late 2012.  (Ex. 6; Ex. 15, ¶ 13.)

---

not to claim that she applied in 2011 as well; rather, she stated that "it should not matter when Mr. Harrison was hired, because he was still less qualified than she." (Ex. 3, p. 2.)  Even Sanford's complaint fails to allege a discriminatory failure to hire in the Fall 2011 hiring season.  (*See* Dkt. 25.)

*Second*, even assuming that Sanford had applied for the 2011 Walsh College position as she claims, Harrison is still not an appropriate comparator. Deloitte's records show that Harrison applied through Walsh College in 2011, but he was *not offered* an on-campus interview through Walsh. (*Id.* ¶¶ 10-11.) Rather, after the Fall 2011 Walsh recruiting season had ended, Harrison applied directly through the Deloitte.com website for an entry-level position, with a different job code. (*Id.*) He did not compete with, and was not selected from, the on-campus interviewee pool in October 2011. (*Id.*) Sanford, unlike Harrison, did not apply directly with Deloitte subsequent to the Fall 2011 recruiting season. (*Id.* ¶ 12.)

Having failed to submit a complete application, and having failed to apply for the same position as Harrison, Sanford cannot allege a discriminatory failure to hire for those positions. *See Williams v. Hevi-Duty Elec. Co.,* 819 F.2d 620, 629 (6th Cir. 1987). The documents related to the hiring of Harrison are thus irrelevant, are not calculated to lead to relevant evidence, and Deloitte's objection to producing such irrelevant records should be sustained.

### D.    "Personnel Records"

Finally, Sanford seeks to compel production of the "complete personnel records" for all employees hired into positions that Sanford applied for since January 1, 2005. (Dkt. 27, Pg ID 297.) This request is improper, regardless of the timeframes, as the personnel records of people *hired* by Deloitte have no relevance

to the legal question of whether the failure to hire Sanford was discriminatory. Indeed, this Court said the same in its tentative ruling on Deloitte's motion for a protective order to limit the scope of Sanford's proposed depositions of Brian Harrison and two of the 2012 candidates,[7] ruling that Sanford's requests for performance reviews, disciplinary actions, complaints, and the like (sought in connection with Sanford's deposition notices) were off-limits topics.  As Sanford's request for post-hire personnel records is not relevant or calculated to lead to the discovery of relevant evidence, Deloitte's objection should be sustained.

## II.   SANFORD'S REQUESTED PRE-2011 DOCUMENTS ARE NOT RELEVANT "BACKGROUND EVIDENCE" IN THIS CASE

Sanford's requests are also improper to the extent that she seeks documents related to jobs she applied for prior to December 18, 2010, the longest possibly-applicable statute of limitations for Sanford's ELCRA claims.  The Court need not

---

[7]During the October 9, 2014 telephone conference with the Court, Deloitte sought leave to file a motion for a protective order to preclude or limit the scope of depositions of individuals hired by Deloitte & Touche LLP, three of whom had been noticed for deposition by Plaintiff's counsel (Harrison, Justin Gorski, and David Pacini.)  Deloitte objected on relevance grounds, particularly in light of Plaintiff's request for documents from these individuals regarding, among other things, post-hire disciplinary and performance records.  Deloitte objected to allowing the deposition of Harrison altogether, for the reasons set forth herein.

During the call, the Court issued a tentative ruling (and instructed Deloitte to reference that ruling in this response) that the scope of the depositions of Gorski, Pacini, and Harrison, if allowed, would be limited to their background and experience at the time of their interviews, and their actual work duties with Deloitte, but no more.  The issue of whether Brian Harrison will be deposed at all was to be decided with respect to the present motion to compel.

reach this issue, as the only two requests this issue relates to are fully objectionable on other grounds—Sanford's request for "job selection files" remains vague, and the request for personnel files remains irrelevant, regardless of the time-frame.[8]   In any event, as Deloitte stated in its objections to Sanford's RFPs, Sanford's generalized request for hiring records related to her prior job applications, outside the statute of limitations, are not discoverable as "background evidence" for at least two reasons.  (*See* Dkt. 27-3, Pg ID 321-23, 326.)

*First*, while a party may use evidence of discriminatory *acts* occurring outside the statute of limitations if it is relevant to proving a timely claim, a party is not entitled to engage in "mini-trials" of untimely claims, under the guise of "background evidence."   The case of *Jackson v. City of Chicago*, 552 F.3d 619 (7th Cir. 2009) is instructive.  There, the plaintiff's sole timely charge was that he had been denied a job due to his race.  He had a time-barred claim that he was discriminatorily denied training opportunities, however, and wanted to claim that the discriminatory lack of training was relevant to his denial-of-hire claim.  *Id.* at 622-23.  The Seventh Circuit rejected this approach, holding that the evidence sought would not be relevant "background evidence" absent a "mini-trial" of the untimely claim—including comparing qualifications of Plaintiff and the selected

---

[8] The other two requests involve the hiring of candidates in 2011 or 2012, neither of which implicates pre-December 2010 documents.  *See supra* Part I.

trainees, and determining whether the skills plaintiff would have gained in the prior training would have been relevant to the job at issue. *Id.*

*Second*, alleged "background evidence" must have a relevant nexus to the timely acts of discrimination. Thus, in *Weigel v. Baptist Hospital*, 302 F.3d 367, 379 (6th Cir. 2002), the Sixth Circuit held that time-barred claims of discrimination by past supervisors was not proper "background evidence" for a discrimination claim against a different group of current decision-makers.

Sanford's discovery requests run afoul of both principles. While her brief never explicitly argues what she considers to be "background evidence" and why, it appears that Sanford wants to try and prove that all of the old failures-to-hire were discriminatory. Sanford continues to argue that she was discriminatorily denied positions "from 2005 to 2012," (Dkt. 27, Pg ID 295), and that Deloitte had a "pattern and/or practice toward its African American applicant compared to its non-African American applicants." (*Id.* at 298.) Other document requests and interrogatories (not challenged here) likewise confirm Sanford's intent: She has asked for resumes, applications, and other documents related to pre-December 2010 applicants (*see* Ex. 9)—*i.e.*, documents that are not themselves evidence of discrimination, but which are often used to try and establish a *prima facie* and/or pretext case through a *McDonnell Douglas* analysis. Sanford is not entitled to hold

trials of multiple stale claims in the hopes that she can "prove" past discrimination, as a prelude to the actual trial of the timely claims in this case.[9]

Sanford also does not explain, or argue in her motion, how documents related to untimely failure-to-hire allegations would be relevant to her current, timely claims of discrimination.  Nor do her requests contain internal limitations that might suggest such a nexus; for instance, Sanford does not limit her requests to prior hiring decisions involving Sanford and the *same* decision-makers as the timely claims.  *See Weigel*, 302 F.3d at 379.

For either of these independent reasons, Sanford's requests for old documents related to time-barred applications for employment with Deloitte are improper, and Deloitte's objection should be sustained on this ground as well.

## III. SANFORD IS NOT ENTITLED TO FEES, AND DELOITTE SHOULD BE AWARDED FEES IF THE MOTION IS DENIED.

### A.    Sanford's Request for Sanctions is Unwarranted

Sanford's motion and brief also contain a perfunctory request for costs and fees, citing only Rule 37 generally and without argument.  (*See* Dkt. 27, Pg ID 293,

---

[9] Sanford's primary case confirms that a mini-trial of untimely claims is not appropriate.  In *Cantrell v. Knoxville Community Dev. Corp.*, 60 F.3d 1177 (6th Cir.1995), a Title VII termination case, the plaintiff was allowed to use the fact that he had filed an EEOC complaint for disparate pay as "background evidence," because the employer started to scrutinize his work unfairly afterwards, leading to the discharge.  (*See* Dkt. 27-6, unpublished app'x at *16-17, 21-22.)  But *Cantrell* also held that it was inappropriate to award the plaintiff "indirect relief for the disparate pay claim" by awarding back-pay damages for the discharge at the hourly rate plaintiff would have received but for the disparate pay.  *Id.* at 1181.

301.)  The request should be deemed waived.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  In any event, and assuming Sanford's request for sanctions relates to Rule 37(a)(5)(A), sanctions would be inappropriate here.

*First*, Sanford did not "attempt[] in good faith to obtain the disclosure or discovery without court action."  Fed.R.Civ.P.(a)(5)(A)(i).  As Sanford's own motion recounts, the first discussion of the Deloitte's responses to the Second Request for Production occurred during the October 9, 2014 phone conference with the Court, arranged to discuss Deloitte's proposed motion for a protective order for the depositions of Harrison, Gorski, and Pacini.  (Dkt. 27, Pg ID 291, ¶ 6; *see also* Ex. 16.)  That alone precludes her request for sanctions.

*Second*, Deloitte's objections to the requests at issue are "substantially justified."  Fed.R.Civ.P.(a)(5)(A)(ii).  A motion is "substantially justified if it raises an issue about which there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action."  *Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005).  This response sets forth the factual and legal arguments as to why Sanford's requests are objectionable, and those objections are substantially justified.

### B.    Deloitte Should Be Awarded Fees for Responding to the Motion

Rule 37(a)(5)(B) provides that if a motion to compel is denied, the court "must . . . require the movant, the attorney filing the motion, or both to pay the

party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was substantially justified or other circumstances make an award unjust.  And if a motion to compel is denied in part, the Court may apportion expenses. Fed.R.Civ.P. 37(a)(5)(C).

If the motion is denied in whole or in part, Deloitte should be entitled to fees incurred in responding to this motion.  Sanford's motion to compel is not justified. It is largely devoid of any legal or factual arguments specific to this case—as discussed, there is no explanation of what a "job selection" file is, no discussion of the alleged insufficiency in the production of resumes and job applications, no arguments on the relevance of Harrison; no explanation as to why the pre-2010 documents requested are relevant "background evidence," and no justification for seeking personnel files of *hired* individuals—particularly after this Court had already indicated that such document requests were inappropriate.

## CONCLUSION

The Court should deny Plaintiff's Motion to Compel in full, deny Plaintiff's request for sanctions, award Deloitte its fees and costs incurred in responding to the motion; and finalize its tentative, October 9, 2014 order (1) that Brian Harrison should not be deposed; and (2) that, as to any candidate hired by Deloitte for positions that the Plaintiff actually applied for, the scope of any deposition be

-15-

limited to only those candidates' background and experience at the time of their interviews, and their actual work duties at Deloitte.

KIENBAUM OPPERWALL HARDY
   & PELTON, P.L.C.

By:/s/Thomas J. Davis
   Elizabeth Hardy (P37426)
   Thomas J. Davis (P78626)
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
Dated:  October 30, 2014    tdavis@kohp.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following: ajennings@edwardsjennings.com; Duncan@iabattorneys.com and I hereby certify that I have caused to be served via U.S. mail the foregoing document to the following non-ECF participants:

(no manual recipients)

/s/Thomas J. Davis
280 North Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
Email:  tdavis@kohp.com
(P78626)