UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA R. SANFORD,

    Plaintiff,

v.

DELOITTE, LLP a/k/a
 DELOITTE & TOUCHE USA LLP,
 a/k/a DELOITTE & TOUCHE LLP,

    Defendant.
_____/

Case No. 5:13-CV-15167

Honorable Judith E. Levy
Magistrate David R. Grand

Alice B. Jennings (P29064)
EDWARDS & JENNINGS, PC
65 Cadillac Square, Suite 2710
Detroit, MI 48226
(313) 961-5000
ajennings@edwardsjennings.com

Felicia Duncan Brock (P63352)
I.A.B. ATTORNEYS AT LAW, PLLC
25447 Plymouth Road
Redford, MI 48239
(313) 318-3180
Duncan@iabattorneys.com

*Attorneys for Plaintiff*

Elizabeth Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

*Attorneys for Defendant*

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**SECOND MOTION TO COMPEL**

# CONCISE STATEMENT OF ISSUES PRESENTED

1. Should Plaintiff Angela Sanford's Second Motion to Compel be denied, because, as Plaintiff concedes, Brian Harrison was not offered an interview or employment in January 2012 "in response to his earlier Walsh College application" but rather due to a resume provided to Deloitte's recruiter from a different accounting firm?

    Defendant Deloitte LLP says "yes."

    Plaintiff Angela Sanford would say "no."

2. Alternatively, should Plaintiff Angela Sanford's Second Motion to Compel be denied because, contrary to the scenario this Court found might justify his deposition, Harrison was not hired as a result of being asked by Deloitte to enter a job-specific profile for the Walsh requisition?

    Defendant Deloitte LLP says "yes."

    Plaintiff Angela Sanford would say "no."

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ............................................. i

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................2

ARGUMENT ...........................................................................................................4

CONCLUSION ........................................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*Wanger v. G.A. Gray Co.*,
   872 F.2d 142 (6th Cir. 1989) ................................................................................. 6

*Williams v. Hevi-Duty Elec. Co.*,
   819 F.2d 620 (6th Cir. 1987) ................................................................................. 6

## INTRODUCTION

In its November 2014 decision, this Court held that Plaintiff Angela Sanford "failed to plausibly demonstrate" that she applied for a position with Deloitte in the fall of 2011, and thus held that Brian Harrison—who was rejected for the same position in the fall of 2011, and who was independently hired in January 2012—was not an appropriate comparator and that his deposition was unwarranted. (Dkt. 33, Pg ID 504, 505.) The Court, however, permitted document discovery regarding Harrison's applications. Noting that Walsh's on-campus recruiters could ask candidates to submit a job-specific profile, the Court reasoned that if Deloitte asked Harrison to complete that profile in connection with the Walsh recruiting process, but not Sanford—and Harrison was hired as a result—then "that recruitment would potentially open the door to Harrison being a proper comparator." (*Id.*)

That discovery is now complete, and the record undisputedly rules out that Harrison's hiring in January 2012 was in any way connected to the 2011 Walsh recruiting process or the October 2011 job-specific profile that Harrison (but not Sanford) completed in connection with the Walsh recruiting season. Harrison, in fact, was rejected as a Walsh applicant in 2011. He was ultimately hired in 2012—but only after he was recommended to Deloitte by the firm he was interning with, and after he submitted a *second*, distinct application with Deloitte to a different job

-1-

requisition. Sanford did not apply—and does not claim to have applied—for this distinct non-Walsh job position, and the Court should end her attempt to depose Harrison because he was hired for a job that she did not apply for.

## BACKGROUND

During the Fall 2011 recruiting season, Deloitte sought candidates from Walsh College, among other schools, for entry-level positions at Deloitte starting the following year. (Dkt. 29-16, Pg ID 456, ¶ 3.) In order to apply for one of those positions, students were instructed to go to Deloitte's website and apply to the school-specific job position they were interested in. (*Id.* ¶ 4.) The reference code for the Walsh College job position was S12WALAF13SEP-XA. (*Id.*) Neither Harrison nor Sanford received an offer in connection with this job position.

Angela Sanford claims that she submitted her application materials through Walsh College itself, but she did not submit a job-specific profile for the Walsh College job position through the Deloitte website. (Dkt. 33, Pg ID 504; *see also* Dkt. 29-16, Pg ID 457, ¶ 9.) Deloitte's records confirm that Harrison submitted an application for the "Walsh College - Staff Audit Services" position on October 6, 2011, with the job code S12WALAF13SEP-XA. (Ex. A, p. 2.) Harrison likewise received an email acknowledgment from Deloitte thanking him for submitting his profile for the S12WALAF13SEP-XA position. (Ex. B.) That email specifically

indicated that Harrison's submission was job-specific (*i.e.*, a "candidate profile related to this position") as distinguished from a "general candidate profile." (*Id.*)

Despite submitting the profile for the S12WALAF13SEP-XA position, Harrison did not receive the job. Deloitte's records show that on October 12, 2011, Harrison's status was "changed to Rejected in step Initial Screen" as a "[m]ore qualified external candidate [was] selected," and he was sent a letter classified as "Kind Regret." (Ex. A, p.1.) Harrison thus was not hired through Walsh College for an entry-level position. (Dkt. 29-16, Pg ID 457-58, ¶ 10.)

Harrison's 2012 job offer was not connected to the 2011 Walsh hiring process. As former Deloitte recruiter LaDonna Upshaw testified, on occasion there would be open positions outside the fall recruiting season, under a different requisition. (Ex. C, Upshaw Dep. 15-16, 56.) One such occasion was in January 2012; there was an opening for an entry-level position on the Deloitte.com website, with requisition number S12DETAF13SEP-XA. (Dkt. 29-16, Pg ID 458, ¶ 11.) This requisition was for an entry-level position, but it was not a part of the Fall 2011 recruiting season. (Ex. C at 60, 62.) With respect to that January 2012 position, Ms. Upshaw received Harrison's resume from a recruiter at Rehmann—the accounting firm where Harrison was beginning an internship.[1] (Ex. C at 58, 61-62; *see also* Ex. D, p. 3 (January 2012 Harrison resume reflecting Rehmann

---

[1] Misspelled as "Raymond" in the deposition transcript.

-3-

internship)). The Rehmann recruiter indicated that Harrison was interested in obtaining a position with one of the Big 4 accounting firms. (Ex. C at 62.) Based on the resume, Upshaw reached out to Harrison. (Ex. C at 59; Ex. E.) On January 9, 2012, Harrison submitted a cover letter and resume via email (Ex. D), and also submitted an online job application for the S12DETAF13SEP-XA position. (Ex. F.) Harrison was then interviewed, and obtained the position.

## ARGUMENT

In its November 19, 2014 decision, this Court held that Sanford had not "plausibly demonstrate[d]" that she had applied for the Walsh College position in 2011 because she did not "submit a job-specific profile on defendant's website." (Dkt. 33, Pg ID 504.) Nor had Sanford showed that "Harrison actually applied for and received the same job she claims to have applied for." (*Id.* at 505.) The Court left open one possible avenue for Harrison's deposition, however. Campus Recruiter Taylor Mathis explained in her declaration that for the two-step Walsh process (*i.e.*, applying through Walsh itself and *also* applying for the same college position on Deloitte.com), a recruiter had the discretion to "recruit" candidates who only applied through Walsh and had failed to concurrently apply at Deloitte. (Dkt. 29-16, Pg ID 456-57, ¶ 6.) Noting this portion of Mathis's affidavit, the Court appeared to reason that if Harrison was asked to submit the job-specific Deloitte.com profile that Sanford failed to complete—and thus he applied through

Deloitte.com "in response to his earlier Walsh College application," then this "would potentially open the door" to Harrison being a proper comparator. (Dkt. 33, Pg ID 504-05.)

Harrison, however, was not hired in 2011—or 2012 for that matter—for the S12WALAF13SEP-XA position through Walsh College, nor was he hired as a result of the job-specific profile that he completed during that interview process. Rather, on October 12, 2011, Harrison was "[r]ejected" for the Walsh position at the initial screening phase because a "[m]ore qualified external candidate [was] selected" (Ex. A, p.1), and he was not invited to the Detroit office for a second round of interviews in the Fall of 2011. Accordingly, he was not treated better than Sanford on the only possibly relevant ground for comparison: their applications for the Walsh College opening.

Harrison later submitted a *second* application for a different entry-level requisition (S12DETAF13SEP-XA) on January 9, 2012. (Ex. F.) But as discussed, this was *not* the job-specific Walsh requisition that Harrison (but not Sanford) had submitted a job-specific profile for in October 2011. (*Compare* Ex. A, B *with* Ex. F.) Nor was Harrison's January 9, 2012 application submitted "in response to his earlier [2011] Walsh College application." (Dkt. 33, Pg ID 504-05.) Upshaw did not, for instance, dig through old resumes of unsuccessful Walsh candidates to uncover Harrison; Upshaw testified that her invitation to Harrison was based solely

-5-

on the resume she received from the recruiter at the Rehmann Group. (Ex. C at 59.) Upshaw also testified that Harrison's 2012 hiring was not part of the earlier Walsh recruiting season. (*Id.* at 62.) Thus, there is no link between Harrison's unsuccessful October 2011 application through the Walsh requisition and his January 2012 application to the Detroit requisition.

The fact that Harrison was hired under a distinct job requisition in 2012 means that he is not similarly situated to Sanford as a matter of law. Sanford does not claim that she applied for the S12DETAF13SEP-XA position that was posted on Deloitte.com in January 2012, and in fact she did not.[2] (*See* Dkt. 29-16, Pg ID 458, ¶ 12.) She cannot assert discriminatory treatment because Harrison was hired for a job she did not apply for. *See Wanger v. G.A. Gray Co.*, 872 F.2d 142, 147 (6th Cir. 1989). Nor can she complain that Upshaw did not affirmatively seek her out and ask her to apply for this new opening—once Deloitte decided that it needed to hire an additional entry-level candidate, it had no obligation to seek out prior, unsuccessful candidates, *see Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 630 (6th Cir. 1987), and it did not do so to find Harrison. (Ex. C. at 62.)

---

[2] Sanford's motion seeks to conflate the 2011 Walsh position (which included applying through Walsh and submitting a Walsh-specific profile on Deloitte.com), and the January 2012 position that Harrison applied for as a result of Upshaw receiving a resume from a recruiter at Rehmann. Sanford attempts to make this link by stating that Harrison was contacted in January 2012 by a "campus" recruiter who noted he went to Walsh (Br. 10) but, as Ms. Upshaw explained, the 2012 position was also entry-level, meaning that campus recruiters (not experienced-hire recruiters) were responsible for the hiring process. (Ex. C at 60.)

## CONCLUSION

Ultimately, Brian Harrison's 2011 Walsh application is a coincidence, with no relevance to his 2012 hiring. Harrison was rejected during the Walsh Fall 2011 recruiting season, and was hired in January 2012 under a different process, as a result of a third-party recruiter reaching out to Deloitte. Harrison's 2012 interviews and hiring were not "in response to his earlier Walsh College application," and so the Court's initial ruling that Harrison has no relevance to this case is correct. The motion to compel Harrison's deposition should be denied.

                                                KIENBAUM OPPERWALL HARDY
                                                    & PELTON, P.L.C.

By:/s/Thomas J. Davis
    Elizabeth Hardy (P37426)
    Thomas J. Davis (P78626)
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

Dated: January 28, 2015

-7-

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2015, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following: ajennings@edwardsjennings.com; Duncan@iabattorneys.com and I hereby certify that I have caused to be served via U.S. mail the foregoing document to the following non-ECF participants:

(no manual recipients)

/s/Thomas J. Davis
280 North Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
Email: tdavis@kohp.com
(P78626)