## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Angela R. Sanford,

|  |  |  |
|---|---|---|
|  | Plaintiff, | Case No. 13-cv-15167 |
|  |  | Hon. Judith E. Levy |
| v. |  | Mag. Judge David R. Grand |

Deloitte LLP,

                            Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [50]

This is an employment discrimination case resulting from defendant's decision not to offer plaintiff one of eleven entry level public auditor positions after she was ranked forty-third out of fifty-two applicants who were selected to be interviewed. Pending is defendant's motion for summary judgment. (Dkt. 50.)

## I. Background

### A. Plaintiff's Education and Work Experience

Angela Sanford graduated from Walsh College in Troy, Michigan in 2006 with a Bachelor's Degree, and in 2009 with a Master's Degree,

both in accounting. (Dkt. 52-2 at 26.) She earned a GPA of 3.6 during her undergraduate studies and 3.3 while earning her graduate degree. (Dkt. 52-3.) In 2011, Sanford became a Certified Public Accountant, recognized by the State of Michigan. (Dkts. 52-3; 52-4.)

Plaintiff is currently employed by BeneSys, Inc., an accounting firm, and has been employed there since June 2010. (Dkt. 52-2 at 14.) At BeneSys, she prepares financial statements for clients and assists auditors by preparing schedules, journal entries, and tax returns. (Dkt. 52-2 at 18.)

Sanford is an African-American woman and was forty-one years old at the time of the alleged discrimination. (Dkts. 25 at 2; 29-15 at 2.) She alleges that she applied for employment with defendant multiple times between 2005 and 2012, but bases this Complaint only on her most recent application in October, 2012. (Dkts. 52-2 at 28; 33.)

In August 2012, Sanford contacted Arica Harris, then a Deloitte employee in St. Louis, Missouri, through a mutual friend. (Dkt. 52-2 at 29.) Harris referred plaintiff to Deloitte's Campus Recruiter, LaDonna Upshaw. (Dkt. 52-5 at 7-8.) Upshaw forwarded plaintiff's résumé to Nathan Gambill, a recruiter for applicants with previous experience.

2

(Dkt. 52-5 at 8.)   Because Sanford did not have the requisite auditing experience to be considered an "experienced" hire, Gambill sent her application back to Upshaw for consideration as a "campus hire." (Dkt. 52-5 at 8.) The experienced hire positions required at least one year of public auditing experience, which Sanford lacked. (Dkt. 50-3 at 3-4.)

A campus hire (entry-level) position required a GPA of at least 3.0, some relevant work experience, and the ability to take the CPA exam before starting full-time employment. (Dkt. 50-5 at 25-26.) Sanford met all of these qualifications.

Sanford had an initial on-campus interview for an entry-level audit position on October 3, 2012. (Dkt. 52-2 at 53.) Defendant offered plaintiff a second interview on October 16, 2012, at Deloitte's Detroit offices. (Dkt. 52-2 at 41.) There, she interviewed with Audit Manager Leslie Fischer, and Deloitte's partners Julie Warhman and Brad Stevenson, and she had an informal lunch with Michael Pangrazzi, another Deloitte employee. (Dkt. 52-2 at 43-44.)

## B. Defendant's Hiring Process

The campus hiring process begins with an on-campus interview and résumé review. (Dkt. 50-7 at 6.) Applicants considered qualified for

the position, both on paper and as a result of the initial on-campus interview, are advanced to second-round interviews at Deloitte. (Dkt. 50-8 at 5.) The second-round interviews use "behavioral interviewing" techniques to probe into an applicant's relevant experience to "determine whether the candidate has displayed judgment, strong communications skills, effective teamwork, or other required soft skills." (Dkts. 50-2 at ¶¶ 5, 7-9; 50-7 at 7; 50-19 at ¶ 4.) Behavioral interviews are designed to assess a candidate's personality and skills. (Dkt. 50-2 at ¶ 6.)

Following the interview session, the interviewers meet with recruiting staff in a "consensus meeting" to score candidates and determine who should receive offers of employment. (Dkts. 50-2 at ¶ 5; 50-7 at 12; 50-9 at 12-13; 50-11 at 5.) The consensus meeting allows interviewers to indicate a recommendation of hiring (by giving a score of 1), a "maybe" (score of 2), or a no (score of 3), based on the skills the interviewer believes the candidate possesses. (Dkts. 50-9 at 13-14; 50-7 at 14-16.) Interviewers may change their scores at the consensus meeting after discussion with the other interviewers. (Dkt. 50-7 at 16.) The scores are then aggregated, with a lower aggregate score indicating

4

a stronger recommendation. (Dkts. 50-9 at 13-14; 50-7 at 14-16; 50-5 at 62.)

## C. Defendant's Decision Not to Hire Plaintiff and Alleged Discrimination

Sixteen candidates were offered the position plaintiff applied for, each with an aggregate score of three or four; plaintiff's aggregate score was eight (two scores of "3" and one of "2"). (Dkt. 50-5 at 62.) Plaintiff's score tied her for forty-third out of fifty-two applicants, and she was not extended an offer of employment. (Dkt. 53-14; Dkt. 50-5 at 62.) Of the candidates who were offered positions, three voluntarily reported their race as Asian, one as Black or African-American, one as Hispanic or Latino/White, and the rest as White. (Dkt. 50-6 at 2-49.) Plaintiff focuses her challenge on the eleven applicants who accepted offers of employment.  Of these applicants, eight are members of at least one protected class based on gender or race. (Dkt. 50-6 at 2-49.)

Plaintiff also alleges that Arica Harris, a Deloitte employee, told her that she was not extended an offer because of concerns from "management" about whether plaintiff could work for a younger manager. (Dkt. 52-2 at 30.) Harris testified that she does not remember the conversation. (Dkt. 50-17 at 5.)

5

Plaintiff relies, in part, on self-conducted research of the other candidates from professional and social networking websites. (*See, e.g.,* Dkt. 52-2 at 54.) The ages of the candidates were not known to defendant at the time of the interviews and do not appear in the record, but neither plaintiff nor defendant point to any candidate older than Justin Gorski, who was thirty-four years old. The following table was created using self-reported demographic information of the applicants who were extended job offers from their applications and other exhibits offered by Deloitte. (Dkts. 50-6 at 2-49; 50-21):[1]

| Name of Applicant | Race | Sex (M/F) |
|---|---|---|
| Kelly Dunbar | White | F |
| Jillian Esshaki | White | F |
| Justin Gorski | White | M |
| Trevor Kuenz | White | M |
| Lina Kustantin | White | F |
| Wonseok Lee | Asian | M |
| David Pacini | Hispanic or Latino/White | M |
| Tiffinique Walls | Black or African-American | F |

---

[1] Categories taken from EEOC survey on employment applications.

| Tyler Webb | White | M |
| Ko Yamamoto | Asian | M |
| Ruohan Yang | Asian | F |

Neither party provided demographic information regarding the candidates who were not offered a position. Plaintiff provided an exhibit titled "Chart of Comparables," created without the assistance of counsel. (Dkt. 53-10; *see* Transcript of July 7, 2015 Hearing.) In it, Sanford scored several candidates who were offered the position based on her own criteria, without explaining her evaluation methodology. (Dkt. 53-10.) Plaintiff ranks herself first, earning seven points. She appears to have arrived at this total score by granting points for: having Bachelor's and Master's degrees, combined with her post-Bachelor's degree work experience, GPA, marketing experience, teamwork experience, and having already obtained her CPA. (Dkt. 53-10.)

Plaintiff argues that Brian Harrison and Ko Yamamoto, two others offered employment by defendant, are proper comparators. (Dkt. 52 at 18.) Plaintiff and Harrison did not apply for any of the same positions and Harrison was offered a position for which plaintiff did not apply. (Dkt. 52-5 at 30; *see also* Dkts. 33, 39.) Yamamoto applied for the

7

same position as plaintiff, but received an offer of employment for a position that required fluency in both English and Japanese. (Dkts. 50-5 at 62; 50-6 at 51; 50-11 at 20; 50-10 at ¶ 8.) Plaintiff's counsel indicated at oral argument that plaintiff does not speak Japanese. (*See* Transcript of July 7, 2015 Hearing.)

Sanford also refers to multiple job applications with defendant from 2005-2012. (Dkts. 52-2 at 28; 33.) Plaintiff's amended complaint references "no less than seventeen" applications to Deloitte, but no evidence has been submitted regarding the other candidates for those positions, how many offers of employment were made, the hiring process, or any other information regarding those earlier applications. (Dkt. 25 ¶ 10.) Plaintiff applied for those positions through the Walsh College campus portal and did not submit additional information through Deloitte's website. (Dkts. 53-4; 52-5 at 14-15; 52-2 at 28.) Plaintiff refers to multiple applications in her response to defendant's motion for summary judgment, but only presents evidence and argument regarding the most recent application, in 2012. (Dkt. 52 at 17.)

8

Plaintiff filed suit on December 18, 2013. (Dkt. 1.) She alleges defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. §§ 37.2101-37.2202. Defendant filed this motion for summary judgment on March 27, 2015. (Dkt. 50.) Plaintiff filed a response on April 17, 2015. (Dkts. 52; 53.) Defendant filed a reply brief on May 4, 2015. (Dkt. 54.) Plaintiff was granted leave to file a sur-reply and filed it on June 17, 2015, and oral argument was held on July 7, 2015. (Dkts. 55; 56.)

## II.    Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt.*

*Hawley, Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis of Title VII, ADEA and ELCRA Claims

Plaintiff brings claims under Title VII, ADEA, and ELCRA, alleging defendant discriminated against her on the basis of her age, race, and gender when it failed to hire her for an entry level public audit position.

### A. Age Discrimination Claims

In order to prevail on a claim of age discrimination under the ADEA, 29 U.S.C. § 623(a)(1), or age discrimination under ELCRA, M.C.L. § 37.2202(1)(a), a plaintiff must provide either direct evidence of intentional discrimination, or provide circumstantial evidence of disparate treatment on a discriminatory basis. *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000). ADEA and ELCRA age discrimination claims are subjected to the same analysis. *Geiger v. Tower Automotive*, 579 F.3d 614, 626 (6th Cir. 2009).

A plaintiff can make a successful claim of disparate treatment by showing direct evidence of discrimination. *McDonnell Douglas*, 411 U.S. at 793; *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir.

10

2003). Direct evidence is evidence which, if believed, demonstrates that unlawful discrimination was a motivation for the decision. *Wexler*, 317 F.3d at 570. A plaintiff may also succeed by providing indirect evidence of discrimination, by following the burden-shifting evidentiary framework set out in *McDonnell Douglas*. *Hein*, 232 F.3d at 489 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). In ADEA claims, unless the plaintiff can show that age was the "but-for" cause of the discrimination, the "burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross v. FBL Financial Services, Inc.*, 577 U.S. 167, 180 (2009).

If the plaintiff cannot show direct evidence of discrimination, she may rely on circumstantial evidence that allows a reasonable finder of fact to infer that unlawful discrimination motivated the decision. *Wexler*, 317 F.3d at 570 (citing *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)). In order to proceed with a claim of age discrimination, the plaintiff must first make a *prima facie* case showing that at the time of the employment decision:

(1) she was over 40 years old; (2) she was qualified for the job; (3) she was not hired; and (4) a younger person was hired. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998).

If the plaintiff is successful in making a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for choosing not to hire the plaintiff. *Hein*, 232 F.3d at 489.

Finally, if the defendant offers a legitimate reason for the decision, the burden shifts back to the plaintiff to show that the employer's proffered reason was a mere pretext for discrimination. *Id.* A plaintiff may demonstrate pretext by showing that the reason had no basis in fact, did not actually motivate the decision, or was insufficient to justify the decision. *Wexler*, 317 F.3d at 576 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). It is not enough that the employer's decision is incorrect; the plaintiff must show that the articulated reasons are masking illegal discrimination. *Id.* The same burden-shifting evidentiary framework is used in Title VII, ADEA, and ELCRA claims. *Geiger*, 579 F.3d at 622.

## 1. Plaintiff's Direct Evidence

Plaintiff identifies as direct evidence of discrimination Harris's alleged remark that "they" (some person or people at Deloitte) were worried that plaintiff could not work for a younger manager. (Dkt. 52-2 at 30.)

Even if the statement might be indicative of discrimination, defendant contends that the statement is triple hearsay. (Dkt. 50 at 16-17.) The statement comes from plaintiff, who says she heard it from Harris, who heard it from Upshaw, who heard it from "Deloitte." (Dkt. 52-2 at 30.) Each level of hearsay must fit an exception for the statement to be admissible. Fed. R. Evid. 805; *Back v. Nestle USA, Inc.*, 694 F.3d at 577-78 (6th Cir. 2012).

Evidence inadmissible at trial, including hearsay, cannot be considered on a motion for summary judgment. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994). Plaintiff contends that the statement by Harris is an exception to hearsay, made at the time of and within the scope of her employment with defendant, under Fed. R. Evid. 801(d)(2)(D). Harris, however, did not hire or interview candidates for defendant and thus the remark concerned a subject outside the scope of her employment. *See Back*, 694 F.3d at 577 (holding that the speaker did

13

not need to be directly involved in the specific employment decision at issue but the comment must relate to his or her position). Accordingly, the statement is not subject to the hearsay exception in Rule 801(d)(2)(D).

Further, even if both Harris and Upshaw made the statement in the scope of their employment, the representative of Deloitte who reportedly communicated the statement to Upshaw is unidentified and the comment cannot be deemed reliable or within the scope of the declarant's employment absent additional evidence. *Id.* at 578. For these reasons, the statement cannot be considered in deciding this motion.

### 2. Plaintiff's Circumstantial Evidence

Plaintiff was over forty years old at the time of her application. (Dkt. 20-1.) By meeting the "paper" job requirements and being invited to a second interview, plaintiff has demonstrated that she was qualified for the position.

A comparator must be similar to the plaintiff in all relevant respects, such as having the same required qualifications for the position. *Ercegovich*, 154 F.3d at 352. Plaintiff was not hired and has

14

shown that at least one younger person was hired, then thirty-four
year-old Justin Gorski. (Dkt. 53-20 at 3.) Gorski is a proper comparator
as a participant in the same hiring process as plaintiff, subject to the
same requirements and applying for the same position. The seven-year
difference in age between plaintiff and Gorski has been held to be
significant in the Sixth Circuit for ADEA claims. *See, e.g., Grosjean v.
First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003) (holding that while ten
years is commonly the minimum, an age difference of seven years can
be significant). It is unclear from the record if all ten people hired for
the position were significantly younger than the plaintiff. Viewing the
record in the light most favorable to plaintiff, the Court will assume
that all candidates were Gorski's age or younger.

Since plaintiff has made a *prima facie* case of age discrimination,
the burden shifts to defendant to articulate a legitimate, non-
discriminatory reason for not hiring her. Defendant argues that it did
not hire plaintiff as a result of her interview scores discussed at the
consensus meeting. (Dkt. 50-7 at 78-79.) Poor interview performance is
a legitimate, non-discriminatory reason, even if it results in an incorrect
assessment as to the fitness of the applicant for the job. *See Hein* at 490

15

(holding that the decision does not have to be correct, merely non-discriminatory). Defendant does not claim that the interview scores were objective or arrived at as the result of a fixed rubric. (Dkts. 50 at 16-17; 57 at 11.)

Plaintiff argues that she is more qualified than every member of the 2012 hiring class because she already had a Master's degree and is a CPA. (Dkt. 52-2 at 54-55; 53-10.) Defendant argues that plaintiff's degree and certification do not necessarily make her a better candidate because the position she sought does not require them. (Dkt. 53-3 at 2.) Plaintiff points to her "Chart of Comparables," arguing that it displays her superior qualifications relative to the other candidates. (Dkt. 52 at 12.) However, a plaintiff may not substitute her own criteria for those of the employer. *Trapp v. TSS Techs., Inc.*, 485 F. App'x 757, 760 (6th Cir. 2012) (citing *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). All of the candidates who received a second interview met the requirements for the position, and were interviewed to determine if they had *other* skills that would be relevant to job performance such as client interaction, ability to work as a member of a team, and other "soft" skills. (Dkt. 50-2.) The CPA bonus paid by defendant is analogous to the

16

"preference" for a Master's degree in *Wrenn*, in which the job listing preferred a Master's degree but did not require it. *Wrenn*, 808 F.2d at 502 (holding that being the only candidate to possess both of the "preferred" credentials for a position did not necessarily make the plaintiff the only qualified candidate).   Being a CPA is not a requirement and does not indicate, on its own, that a candidate is better suited for the job.

Plaintiff has offered no other evidence to show that defendant's proffered reasons for not hiring her were merely pretexts for discrimination. Plaintiff responds to the three interviewers' statements that the conversations during her interview were halting and that information had to be pulled from plaintiff by pointing to what she claims is a "key requirement" of behavioral interviewing -- that silence not be counted against a candidate. (Dkt. 52 at 5.) Plaintiff's cited evidence, including Audit Manager Leslie Fischer's deposition and Deloitte's interview training materials, however, shows only that allowing silence is one method to make questions more effective. (Dkts. 52-10 at 30-31; 52-8 at 3.) This evidence does not show that excessive or awkward silence cannot be considered in evaluating an applicant.

17

Instead, it says "[t]here are many ways to make a question count including: … 7. Allow silence." (Dkt. 52-8 at 3.) There is no dispute about how the interviews were conducted other than plaintiff's subjective impression of them; plaintiff agreed that she gave short answers to direct questions and discussed her résumé and credentials. (Dkt. 52-2 at 45-48, 144-45.) In the Fischer interview, plaintiff recalls discussing mostly her job responsibilities at BeneSys. (Dkt. 52-2 at 45-46.) Plaintiff recalls discussing two costly errors she found at her current job in both the Stevenson and Warhman interviews. (Dkt. 52-2 at 144.) She also discussed her experience working with a group on a school project with Stevenson, in which she was unable to resolve a group conflict. (Dkt. 52-2 at 145.)

At oral argument, Sanford argued that each job offer was a separate hiring decision by defendant. However, defendant's interview and hiring process constitutes one hiring decision because plaintiff filed one application and competed against one pool of applicants. Plaintiff applied for one position with multiple openings.

Plaintiff's experience was sufficient for defendant to offer her a second-round interview. The interviews were designed to measure a

candidate's "soft" skills such as the candidate's ability to interact with clients and probe into a candidate's relevant experiences. (Dkts. 50 at 4; 50-2 at ¶ 5.) Plaintiff does not contend that any conduct or discussion during her interviews led her to believe that the interviewers were unlawfully discriminating. (Dkts. 52-2 at 46, 48, 151.) Even if the interviewers incorrectly measured plaintiff's experience or made a bad decision when determining she should not be given a job offer, there is no evidence that they made the decision not to hire plaintiff on the basis of her age.

Accordingly, plaintiff's ADEA and ELCRA age discrimination claims are dismissed.

### B. Discrimination on the Basis of Race

In order to make out a claim of intentional race discrimination under Title VII, 42 U.S.C. § 2000e-2, or ELCRA, M.C.L. § 32.2202(1)(a), a plaintiff must first establish a *prima facie* case of discrimination, which varies depending on the specific facts of the case. *Tartt v. Wilson Cnty., Tenn.*, 592 F. App'x 441, 445 (6th Cir. 2014) (citing *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff can establish a *prima facie* case here by showing that she: (1) is a member of a racial minority; (2) applied and was qualified for the job; (3) was rejected despite her qualifications; and (4) a person outside the protected class was hired or the position remained open. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014); *see also McDonnell Douglas*, 411 U.S. at 802. Title VII and ELCRA claims are analyzed identically for claims of discrimination based on gender or race. *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 468 (6th Cir. 2012).

If the plaintiff establishes a *prima facie* case of race discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802.

Finally, if the defendant offers such a reason, the burden returns to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

Plaintiff alleges that defendant failed to hire her because of her race. (Dkt. 25 at 5.) Plaintiff argues that she has established a *prima facie* case of race discrimination because she is African-American,

20

applied and was qualified for the job, was not hired, and defendant hired only one African-American woman in the hiring class of ten, according to defendant's roster of successful applicants. (Dkt. 50-21.) In other words, nine of the ten people extended offers of employment were not the same race as plaintiff. (Id.)

It is unclear if a plaintiff may make a *prima facie* case under such circumstances – certainly nine of the openings for which she was considered were filled with members outside of her protected class, but one was not. *See Hopkins v. Canton City Bd. Of Educ.*, 477 F. App'x 349, 359 (6th Cir. 2012) (holding that when ten of twelve positions are filled with members outside of the plaintiff's class, the plaintiff may establish a *prima facie* case but more evidence is necessary to show pretext due to the small sample size). For the purposes of summary judgment, plaintiff has made a *prima facie* case of racial discrimination.

Defendant claims plaintiff was not hired because of her relatively poor interview performance. (Dkt. 53-14.) Defendant has offered a legitimate, non-discriminatory reason for the decision not to hire plaintiff.

21

The Sixth Circuit has stated that, when there is a racial disparity in hiring, "there are three possible explanations for the [statistical] discrepancy: the operation of legitimate selection criteria, chance, or the defendant's bias, and [a court] determin[es] the existence of a fact issue on bias only after concluding that [the] disparity is more likely than not due to the defendant's bias." *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 437 (6th Cir. 2002) (internal citations omitted). Plaintiff has not demonstrated that defendant's reasons for the decision are pretextual by providing evidence of the percentage of African-American applicants who were extended offers of employment or any other objective data relating to racially discriminatory hiring practices. In fact, at oral argument, defendant stated that there were only two African-American applicants: one was extended an offer and the other was plaintiff. (*See* Transcript of July 7, 2015 Hearing.)

Plaintiff argues that the interview process is subjective, which defendant readily admits, and that as a result it can easily be infected by racial bias or animus that will not be easy to detect. (Dkt. 52 at 19-21.) Defendant states that the interviews were not designed to award points based on applicants' paper qualifications, but to measure the

22

"soft" skills of the applicants and account for subjective judgment of the interviewers. (Dkts. 50 at 4; 50-2 at ¶ 5.) This is evidenced in the screening process for interviews, which require candidates to meet the paper qualifications before being advanced to the second interview.

While the Court is sympathetic to plaintiff's argument that racial bias is not often articulated in open and obvious ways in the hiring context, there is nothing in the record to indicate that the interviewers were biased or dishonest; as previously mentioned, according to plaintiff, nothing any interviewer said or did offended her or led her to believe they were acting in a discriminatory manner (Dkts. 52-2 at 46, 48, 151.)

Plaintiff also alleges that defendant fosters a "discriminatory work environment" because one interviewer, Stevenson, did not personally work with many African-American employees. (Dkt. 52 at 23.) That Stevenson failed to name an African-American partner in defendant's Detroit office is not evidence of race discrimination in this case because partners go through a hiring or promotion process with different criteria than the job for which plaintiff applied. (Dkt. 52 at 23; 52-6 at 12.) Plaintiff must provide statistically significant evidence of racially

disproportionate hiring to make a disparate impact claim. *See Hopson*, 306 F.3d at 437 (holding that plaintiff's study showing statistically significant under-representation of African-American employees in management was strong evidence that chance was not the cause of the disparity). That one person without knowledge of the overall makeup of an employee pool could not name more than two African-American partners is not enough, on its own, to be admissible evidence of a racially discriminatory work environment.

Plaintiff offers no evidence in this case to support her claim that, more likely than not, she was not hired because of her race. *Id.*

Accordingly, plaintiff's Title VII and ELCRA race discrimination claims are dismissed.

### C. Discrimination on the Basis of Sex

In order to bring a claim of sex discrimination under Title VII and ELCRA, plaintiff must first set forth a *prima facie* case of discrimination. *Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 142 (6th Cir. 2009); *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff makes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *McDonnell*

*Douglas*, 411 U.S. at 802. If the defendant successfully articulates a non-discriminatory reason for its decision, the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely a pretext for discrimination. *Id.*

Plaintiff alleges that she was not hired because she is a woman. (Dkt. 25 at 9-10.) Here, plaintiff must show that she is female, applied and was qualified for the position, and that a man received the position instead or that she was treated differently than the male applicants in some way. *Peck*, 347 F. App'x at 142.

Even assuming for the purposes of summary judgment that plaintiff has made a *prima facie* case, defendant has offered a legitimate, non-discriminatory reason for its decision: plaintiff's interview performance. (Dkt. 50 at 30.)

Plaintiff argues that the proffered reason is pretextual because she is better qualified for the position than the candidates who were offered positions. Plaintiff's "Chart of Comparables" does not indicate the gender, race, or age of any of the hired candidates. (Dkt. 53-10.) The chart includes Ko Yamamoto, who was hired at the same time as the other candidates, but for a position in the Japanese Service Group that

required fluency in Japanese and English. (Dkts. 53-14; 50 at 10.) Yamamoto is not a proper comparator. Five of the remaining ten hired candidates on the chart are female. (Dkt. 50-21.) Plaintiff has no complaints about the manner in which her interviews were conducted, nor does she point to any contact with defendant outside of the interviews that could warrant a finding that her gender played a role in defendant's decision not to hire her. (Dkt. 52-2 at 46, 48, 151.)

Plaintiff's belief that she was better-qualified does not create an issue of material fact as to whether defendant's stated reasons for not hiring her are pretextual, particularly in light of the fact that half of the applicants who were selected were female. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (holding that summary judgment depends on the strength of plaintiff's *prima facie* case, the probative value of proof that the employer's explanation is false, and any admissible evidence that supports the employer's case.) Plaintiff has offered no evidence from which a reasonable jury could conclude that defendant's reason for not hiring plaintiff was pretextual and that defendant intentionally discriminated against plaintiff because of her sex.  Plaintiff does not provide statistics regarding the gender makeup

of the applicant pool, or any other evidence showing discriminatory intent.

Accordingly, plaintiff's Title VII and ELCRA sex discrimination claims are dismissed.

## IV.   Conclusion

For the reasons stated above, it is hereby ordered that:

Defendant's motion for summary judgment (Dkt. 50) is GRANTED; and

Plaintiff's complaint is DISMISSED with prejudice.

IT IS SO ORDERED.


Dated: August 14, 2015                    s/Judith E. Levy
Ann Arbor, Michigan                       JUDITH E. LEVY
                                          United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 14, 2015.


s/Felicia M. Moses
FELICIA M. MOSES
Case Manager